# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-469V

| | |
|---|---|
| DANILO FERRER,<br><br>             Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>             Respondent. | Chief Special Master Corcoran<br><br>Filed: November 7, 2025 |

*Rhonda Lorenz-Pignato, Shannon Law Group, P.C.,* Woodridge, IL, for Petitioner.

*Naseem Kourosh, U.S. Department of Justice,* Washington, DC, for Respondent.

**ENTITLEMENT DECISION**[1]

On January 11, 2021, Danilo Ferrer filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] ("Vaccine Act"). ECF No. 1 ("Petition"). Petitioner filed an amended petition on March 3, 2023. Petitioner alleges that following his receipt of an influenza ("flu") vaccine on August 3, 2020, he suffered a left shoulder injury related to vaccine administration ("SIRVA"). ECF No. 25 at ¶¶ 2, 14, 24 ("Amended Petition"). The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the foregoing reasons, I determine that Petitioner is not entitled to compensation for a SIRVA Vaccine Injury Table claim. Petitioner has also not plead or

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

otherwise stated a cognizable causation-in-fact claim. Petitioner's motion for a ruling on the record in his favor is therefore **denied**, and the case dismissed.

I. **Relevant Procedural History**

Petitioner filed this action only five months after receiving the flu vaccine alleged to have caused his injury. He therefore was incapable, at the outset of this matter, of addressing the statutory six month severity requirement. Instead, he alleged that he planned on obtaining follow-up treatment, and that he expected his pain and impairment to last more than six months. Petition at ¶¶ 9-10.

On May 26, 2022, the case was assigned to the SPU. ECF No. 19. On November 3, 2022, an initial status conference was held. Petitioner then filed additional evidence and medical records, as well as the Amended Petition. Respondent represented that he intended to defend this case and filed a Rule 4(c) Report on October 16, 2023. ECF No. 39 ("Rule 4(c) Report").

In the Rule 4(c) Report, Respondent opposed the Table SIRVA claim on two grounds. First, Respondent argued that Petitioner had not satisfied the severity requirement because he had a treatment gap of more than nine months after his initial orthopedist appointment. Rule 4(c) Report at 5-6. Respondent also noted that Petitioner received two COVID-19 vaccinations in his left arm near in time to when he resumed treatment, suggesting that his earlier symptoms had resolved by this point or that any pain he experienced after the treatment gap was attributable to the COVID-19 vaccines, not the flu vaccine. *Id* at 6. Second, Respondent argued that Petitioner could not establish onset of his left shoulder pain within 48 hours of vaccination. *Id.* at 8-10. Respondent emphasized that Petitioner waited three and a half months after vaccination to seek treatment and also made vague and inconsistent statements about onset. *Id.* at 9-11.

On January 8, 2024, I ordered the parties to brief these issues. ECF No. 40. Petitioner filed additional declarations and then a motion for a ruling on the record, which included damages briefing, on February 8, 2024. ECF No. 44 ("Pet'r Mot."). On March 25, 2024, Respondent filed a response to Petitioner's motion for a ruling on the record. ECF No. 45 ("Resp't Opp'n"). On April 1, 2024, Petitioner filed a reply in support of his motion for a ruling on the record. ECF No. 46 ("Pet'r Reply"). This matter is ripe for adjudication.

II. **Relevant Evidence**

I have reviewed all of the evidence filed to date. I will only summarize or discuss evidence that directly pertains to the determinations herein, as informed by the parties'

respective citations to the record and their arguments.

### A. Petitioner's Vaccination and Initial Treatment

Petitioner was 61 years old when he received the flu vaccine. *See* Ex. 7 at 1. In February 2020 (six months prior to the vaccination), Petitioner moved from the Philippines to the United States. Ex. 1 at 1-2. Petitioner lived in Texas with a tourist visa, which he was attempting to change to an investor visa. *Id.* The purpose of Petitioner's trip was to visit family and friends and also explore the possibility of being an investor or partner in a relative's pharmacy/home health business. Ex. 7 at 1. Petitioner's medical records from the Philippines indicate that he had previously been treated for gouty arthritis and swelling in his knee, and had undergone various tests for his heart and lungs. *See* Ex. 12 at 2, 20-23, 31-37. Petitioner did not have any history of shoulder injuries or pain.

On August 3, 2020, Petitioner received the flu vaccine at a Walmart Pharmacy in Tomball, Texas. Ex. 1 at 2. Notably, Petitioner was related to the pharmacy manager who administered the vaccine, Estafania Hundley. Ex. 7 at 1. When Ms. Hundley filled out the vaccine administration record, she circled Petitioner's right arm as the site of vaccination. Ex. 6 at 1. Petitioner later obtained a declaration from Ms. Hundley stating that she accidentally circled the right arm notation, when in fact she had administered the vaccine in Petitioner's left arm. Ex. 7 at 1-2.

Petitioner did not receive any subsequent medical care, for any purpose, until November 18, 2020 (three months post-vaccination), when he saw Dr. Mohammed Sidiquee at Houston Methodist Orthopedics & Sports Medicine. Ex. 11 at 18. Petitioner complained of left shoulder pain and specifically attributed this pain to the flu vaccine. *Id.* Dr. Sidiquee wrote that Petitioner presented for an "evaluation of shoulder pain for the past few months." *Id.* Further, Petitioner "received the flu vaccine in July and reports shoulder soreness at that time which was prolonged."[3] *Id.* Petitioner's shoulder had been "painful, mildly weak, and stiff since then." *Id.*

Dr. Sidiquee examined Petitioner and found that he had pain with forward flexion, abduction, and lying on his left side. *Id.* Dr. Sidiquee also found that Petitioner had an abnormal range of motion ("ROM") and positive Hawkins and impingement tests. *Id.* at 20. X-rays showed moderate acromioclavicular joint osteoarthritis, but no other issues. *Id.* at 21. Dr. Sidiquee diagnosed Petitioner with left shoulder adhesive capsulitis and left shoulder pain of unspecified chronicity. *Id.*

Dr. Sidiquee recommended physical therapy ("PT") and provided a referral. *Id.* He

---

[3] It appears that either Petitioner or Dr. Sidiquee used the incorrect month for the flu vaccine.

also provided Petitioner with a home exercise program ("HEP") and recommended NSAIDs as needed. *Id.* Dr. Sidiquee suggested a cortisone injection, but Petitioner decided to defer it until later. *Id.* According to Petitioner, he performed his HEP as Dr. Sidiquee instructed, at least every other day. Ex. 1 at 2-3; Ex. 16 at 2.

When Petitioner filed this suit on January 11, 2021, he stated that he had scheduled an upcoming appointment on January 13, 2021 with Results Physiotherapy to begin PT. Ex. 1 at 12. However, Petitioner decided to cancel this appointment due to a resurgence of COVID-19 cases in the area. Ex. 8 at 2. Petitioner did not own a car at this time, and was concerned about the expense and potential exposure to COVID-19 if he used a rideshare service. *Id.* There is no documentation of this appointment or its cancellation in the medical records filed by Petitioner.

### B.  Petitioner Follows Up Nine Months Later But Then Ceases Treatment

After his November 2020 appointment with Dr. Sidiquee, Petitioner did not seek any further medical care for approximately *nine months*. The next medical record dates from August 9, 2021, when Petitioner received a COVID-19 vaccine, also in his left arm. Ex. 10 at 4-8. Then, on August 23, 2021 (now more than a year after receiving the flu vaccine), Petitioner had an assessment with physical therapist Mustafa Sakerwalla at Burhani Physical Therapy and Rehabilitation. Ex. 4 at 4-10.

At his appointment with Mr. Sakerwalla, Petitioner indicated that his plan was to be seen once to obtain a HEP and education about the exercises, in lieu of formal PT. *See id.* at 5. Petitioner stated that he was referred to PT but instead did exercises at home because he did not have a car. *Id.* at 4. In terms of onset, Mr. Sakerwalla wrote that Petitioner "[gave] a history that he had flu vaccine on August 3, 2020. 3 weeks later, he had difficulty raising and reaching with his arm." *Id.* at 4. On a separate shoulder pain and disability index form, Mr. Sakerwalla noted "pain observed after flu vaccination August 3, 2020." Ex. 4 at 6.

Petitioner received a second COVID-19 vaccine on September 1, 2021. Ex. 10 at 4. On September 21, 2021, Petitioner returned to Dr. Sidiquee. Similar to the first appointment, Dr. Sidiquee wrote that Petitioner's pain "initially started in July 2020 after receiving flu vaccine." Ex. 11 at 9. Petitioner reported that he had done home PT exercises "for 3 weeks" and had seen improvement in ROM and strength, and a decrease in pain. *Id.* On examination, Petitioner had normal shoulder ROM and no impingement signs. *Id.* at 11. He still reported "mild pain at extremes of ROM," but was "overall much better." *Id.* at 9. Dr. Sidiquee did not see the need for any PT, steroid injections, or

4

imaging. *Id.* at 11. He recommended that Petitioner continue the HEP for another four to six weeks and follow-up as needed. *Id.*

Petitioner did not seek out any further treatment for his left shoulder symptoms.

### C. Declaration Evidence

In his first declaration, filed on January 11, 2021, Petitioner asserted that he felt pain within the first two days after vaccine administration, and that it "progressively worsened."[4] Ex. 1 at 2. Petitioner explained that he did not immediately seek treatment because he believed that his pain would resolve over time. *Id.* He consulted with family members who worked in the medical field, but was apprehensive about obtaining medical care because he did not have health insurance and because of the COVID-19 pandemic. *See id.* When the pain "continued to worsen to the point where it because intolerable," he made the first appointment with Dr. Sidiquee. *Id.* Petitioner averred since the time the vaccine was administered, he had experienced constant pain and soreness that was usually around a 6/10. *Id.* at 3.

As stated above, Ms. Hundley provided a declaration, dated January 10, 2022. Ex. 7 at 4. In addition to claiming that she incorrectly filled out the vaccine administration record, Ms. Hundley made other statements relevant to onset and severity. According to Ms. Hundley, Petitioner informed her approximately two weeks after vaccination that he still had pain in his left shoulder, and repeated this complaint at regular business meetings. *Id.* at 2-3. Further, Ms. Hundley recalled that Petitioner bought his groceries at the Walmart where she worked and had to purchase smaller quantities of items more frequently because he was unable to carry heavy bags to his nearby apartment. *Id.* at 3-4. Petitioner continued to report left shoulder pain to Ms. Hundley through the date of her declaration. *Id.*

Petitioner filed a second declaration on January 3, 2023. Petitioner stated that between January - August 2021, he performed home exercises and regularly massaged his left shoulder, used a warm towel compress, or took pain medication. Ex. 8 at 3. Petitioner still did not have health insurance, but because the pain had not completely resolved, he made the August 23, 2021 PT appointment. *Id.* Petitioner also attempted to clarify Mr. Sakerwalla's note that he had difficulty raising and reaching with his left arm three weeks after receiving the flu vaccine. *See id.* According to Petitioner, he actually told Mr. Sakerwalla that his pain "began when [he] got the flu shot on August 3, 2020 and that [his] left shoulder got progressively worse, and that about 3 weeks later [he] had a lot of difficulty raising and reaching with that arm." *Id.* Petitioner denied stating that he had

---

[4] All declarations in this case were made under penalty of perjury pursuant to 28 U.S.C. § 1746.

no pain or issues with his left shoulder for three weeks following the flu vaccine. *Id.* Petitioner rated his current pain as 1/10 at best and 3/10 at worse. *Id.* at 4.

Petitioner's brother, Reynaldo Ferrer, also provided a declaration. Mr. Ferrer is employed as a nurse and resides in California. Ex. 9 at 1. Like Ms. Hundley, Mr. Ferrer recalled discussing Petitioner's left shoulder pain and ROM limitations regularly since September 2020, including about his difficulties getting groceries. *Id.* at 2-3. Mr. Ferrer's declaration was filed on January 3, 2023, but dated November 4, 2020. Ex. 9 at 3. However, in this declaration, Mr. Ferrer described giving Petitioner a car in March 2021, obviously suggesting that the signature date was not correct. *See id.* at 4. After Respondent pointed out this issue in the Rule 4(c) Report, Mr. Ferrer provided a second declaration stating that the date was a typographical error and should have been November 4, 2022. Ex. 14 at 1.

Petitioner filed a third declaration with his February 2024 motion for a ruling on the record responding to certain arguments made by Respondent in Rule 4(c) Report. With regard to his delay in seeking treatment, Petitioner reiterated that at the time he received the flu vaccine in August 2020, he did not have a primary care provider ("PCP") or health insurance, did not have a car, and was not familiar with how the healthcare system worked in the United States. Ex. 16 at 1. Further, he was hesitant to make any medical appointments because of the ongoing COVID-19 pandemic. *Id.*

In this third declaration, Petitioner provided a somewhat different version of the onset of his symptoms. Instead of describing a pain that progressed in severity over three weeks, Petitioner stated that during the first three weeks after the vaccination, he had "severe, constant pain" in his left shoulder, between 6/10 and 9/10, but after that, the pain improved slightly. *See id.* at 2. Relatedly, Petitioner averred that he developed issues with his ROM "within a short time following the vaccination." *Id.*

Petitioner also discussed his COVID-19 vaccines in August and September 2021. Petitioner stated that he received those vaccines in his left arm "out of habit," and that he "did not have to move or manipulate [his] arm in any way when [he] received them." *Id.* Petitioner was not concerned about getting the COVID-19 vaccines in his left arm because he believed that a SIRVA was an "exceedingly rare occurrence." *Id.* at 2-3. Finally, Petitioner denied having any pain or other issues attributable to the two COVID-19 vaccines and stated that if this had occurred, he would have reported it at his September 11, 2021 appointment with Dr. Sidiquee. *Id.* at 3.

6

### III. Analysis

#### A. Six-Month Severity Requirement

To receive compensation under the Vaccine Program, a petitioner must prove either (1) that he suffered an injury falling within the Vaccine Injury Table, or (2) that he suffered an injury that was actually caused by his vaccine. *See* Sections 13(a)(1)(A) and 11(c)(1). Under either method, however, a petitioner must demonstrate that the injured person has "suffered the residual effects or complications of his illness, disability, injury, or condition for more than six months after the administration of the vaccine."[5] Section 11(c)(1)(D)(i). Cases may appropriately be dismissed for failure to substantiate the severity requirement. *See, e.g.*, *Hinnefeld v. Sec'y of Health & Hum. Servs.*, No. 11-328V, 2012 WL 1608839, at *4–5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré Syndrome resolved less than two months after onset).

The petitioner carries the burden of establishing the matters required in the petition, including the severity requirement, by a preponderance of the evidence. Section 13(a)(1)(A); *see Song v. Sec'y of Health & Hum. Servs.*, 31 Fed. Cl. 61, 65-66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 2014). Congress has stated that the severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1, 2313–373, cited in *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011), *cert. denied*, 132 S.Ct. 1908 (2012); *Wright v. Sec'y of Health & Hum. Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022).

#### B. Legal Standards for Table SIRVA Claims

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A petitioner may prevail on his claim if he has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Table. Section 11(c)(1)(C)(i). The Act prohibits finding that a petitioner has met this burden "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a). If a petitioner establishes a Table injury, causation is presumed.

---

[5] Petitioner does not allege, nor would the evidence support, either alternative for establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). Medical records must be considered, *see* Section 13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). And the Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The factual matters required to prove elements of a Vaccine Act claim may be established by a *mix* of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing Section 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). A SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the

shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### C.   Petitioner Has Established Severity with Preponderant Evidence[6]

In order to meet the statutory six-month severity requirement, Petitioner must demonstrate, by a preponderance of the evidence, that he suffered the "residual effects or complications" of his claimed injury beyond February 3, 2021. *See* Section 11(c)(1)(D)(i). Respondent's argument centers on the nine-month gap in treatment between November 18, 2020 and August 23, 2021. Rule 4(c) Report at 6-8; Resp't Opp'n at 2-6. In Respondent's view, without medical records to span this gap, there is no evidence that the alleged injury existed at all and thus I must conclude that Petitioner's

---

[6] In the Rule 4(c) Report, Respondent noted in the summary of facts the inconsistency between Petitioner's vaccine administration record indicating that he received the vaccine in his right arm, and Ms. Hundley's January 2022 declaration that she actually administered it in his left arm. Rule 4(c) Report at 2. I consider Ms. Hundley's declaration to be extraordinarily thin evidence supporting left arm situs. Ms. Hundley provides no explanation of how, 17 months after the vaccination, she could still specifically recall that she injected Petitioner's left arm. Further, given her familial relationship to Petitioner, there is a strong inference that her belief that she "accidentally" circled the right arm notation is based only on Petitioner's description of a left arm injury, and not any independent personal recollection. However, Respondent chose not to challenge entitlement on this basis, and so I will not give further consideration to this issue.

symptoms did not persist beyond February 2021. *See* Rule 4(c) Report at 6; Resp't Opp'n at 5.

As the record stands, however, Petitioner meets the severity requirement, if barely. Respondent's argument would create an evidentiary burden that is not supported by the statute. The Vaccine Act does not require a petitioner to be under the care of a medical professional to obtain contemporaneous documentation of his symptoms during this six month period. Instead, it is well-established that a treatment gap does not automatically preclude a petitioner from proving severity. *See Law v. Sec'y of Health & Hum. Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Mar. 27, 2023).

Respondent ignores that when Petitioner resumed treatment in August/September 2021, he reported to treaters that he associated his symptoms back to the August 3, 2020 vaccination. *See* Ex. 4 at 4, 6; Ex. 11 at 9. This type of "bridging" evidence can help establish severity (depending on the length of the gap in question). *See Mejias v. Sec'y of Health & Hum. Servs.*, No. 19-1944V, 2021 WL 5895622, at *4 (Fed. Cl. Spec. Mstr. Nov. 10, 2021). At his PT appointment and to Dr. Sidiquee, Petitioner acknowledged significant improvement, but still reported mild pain and wanted to continue performing home exercises. *See* Ex. 4 at 4; Ex. 11 at 11. These reports comport with Petitioner's declaration statements that he performed home exercises and continued to self-treat through the treatment gap. *See* Ex. 8 at 3. There is also no evidence that his symptoms resolved before February 2021. *See Terry v. Sec'y of Health & Hum. Servs.*, No. 20-1998V, 2024 WL 398407, at *6 (Fed. Cl. Spec. Mstr. Jan. 2, 2024).

Further, Respondent unnecessarily discounts Petitioner's explanations for the treatment gap. *See* Resp't Opp'n at 4-6. There is no basis for Respondent's suggestion that Petitioner's declarations automatically must be considered "self-serving" and afforded little weight just because they were filed after the initiation of litigation. *See* Rule 4(c) Report at 7. Additionally, although I cannot find in Petitioner's favor based on his testimony alone, Respondent's suggestion that I can *only* rely on "independent" medical records is also incorrect. *See* Rule 4(c) Report at 8; Resp't Opp'n at 6.

I have previously held that a claimant can satisfy the statutory threshold when he resumes treatment but provides a reasonable explanation for the gap. *Rodionov v. Sec'y of Health & Hum. Servs.*, No. 20-0842V, 2023 WL 8112948, at *5 (Fed. Cl. Spec. Mstr. Oct. 18, 2023). Here, Petitioner's break in formal treatment is reasonably explained by his concerns about COVID-19 exposure, lack of health insurance, lack of transportation (at least through March 2021 when his brother gave him a car), and general unfamiliarity with the American healthcare system, all of which lead him to choose to manage his symptoms on his own. As Petitioner points out, I have made favorable rulings on severity

10

and accepted similar reasons for nine to twelve month treatment gaps the recent cases *Lombardo*, *Horn*, and *Kempkes*.[7] Pet'r Mot. at 15-16; Pet'r Reply at 8.

Respondent attempts to call into question severity by raising a variety of supposed inconsistencies in Petitioner's behavior. For example, Respondent argues that Petitioner must not have been overly frightened of COVID-19 because he made an appointment with Dr. Sidiquee in November 2020, and asserts that he could have contacted the orthopedist's office by phone or through an online messaging system. *Id.* at 3. Respondent finds it strange that Petitioner, despite not having health insurance, chose to pay out of pocket for treatment in August/September 2021, but not earlier. *Id.* at 4. Further, according to Respondent, Petitioner cannot claim ignorance of the healthcare system because he could have asked Ms. Hundley or his brother, both healthcare workers, for assistance. *Id.* Respondent also notes that Petitioner was able to find an attorney to bring this claim relatively quickly. *Id.* In his reply, Petitioner provides several pages of refutation, emphasizing his unique circumstances and the disadvantages that he faced in trying to navigate the healthcare system in a new country. *See* Pet'r Reply at 4-8.

I do not find Respondent's objections to be persuasive. Respondent's arguments on these tangential issues amount to nothing more than speculating, in hindsight, that Petitioner could have put in more effort to obtain medical care. *See* Resp't Opp'n at 4-5. However, as discussed above, Petitioner was not required to receive formal treatment for the six-month period to meet the severity requirement. Petitioner's initial treatment records and the appointments in August and September 2021, in conjunction with his declarations, fulfill his burden of proof on severity. I find that Petitioner suffered from the residual effects and complications of his injury for more than six months post-vaccination.[8]

---

[7] *See Lombardo v. Sec'y of Health & Hum. Servs.*, No. 21-29V, 2023 WL 8788989, at *4 (Fed. Cl. Spec. Mstr. Nov. 17, 2023); *Horn v. Sec'y of Health & Hum. Servs.*, No. 21-0398V, 2024 WL 910811, at *3 (Fed. Cl. Jan. 30, 2024); *Kempkes v. Sec'y of Health & Hum. Servs.*, No. 20-1667V, 2024 WL 910805, at *5 (Fed. Cl. Jan. 31, 2024). Petitioner also cites *Reser v. Sec'y of Health & Hum. Servs.*, No. 20-0825V, 2023 WL 2535888 (Fed. Cl. Feb. 9, 2023), which addressed onset, for the principle that a lack of health insurance provides a reasonable explanation for a delay in seeking treatment. *See* Pet'r Mot. at 16.

[8] In the Rule 4(c) Report, Respondent argued that Petitioner failed to make out a Table SIRVA claim because of a lack of preponderant evidence that his injury was the result of a covered vaccine. Rule 4(c) Report at 9. Respondent pointed to how Petitioner resumed treatment shortly after receiving the COVID-19 vaccine on August 9, 2021. *See id.* In the response to Petitioner's motion, however, Respondent only included this issue as part of the severity analysis, arguing that Petitioner's decision to receive COVID-19 vaccines in his left arm demonstrated that any injury from the flu vaccine resolved by that point. Resp't Opp'n at 5. Regardless of the framing, Petitioner's COVID-19 vaccines do not defeat his claim. Petitioner's medical records do not support Respondent's suggestion that he suffered two separate shoulder injuries, with the first resolving in less than six months. Further, even if Petitioner's initial symptoms had greatly subsided by August 2021, that would still be well beyond the six month requirement. Petitioner explained in his declaration why he felt comfortable receiving more vaccines in his left shoulder, Ex. 16 at 2-3, and other than disagreeing with this logic, Respondent cannot demonstrate a lack of preponderant evidence that the flu vaccine precipitated Petitioner's symptoms.

### D.   Petitioner Has Not Establish Onset Within 48 Hours By Preponderant Evidence

Despite the favorable severity determination, the claim ultimately founders on onset. A Table SIRVA claim requires proof of onset of shoulder pain within 48 hours of vaccination. 42 C.F.R. §§ 100.3(a)(XIV)(B), (c)(10)(ii). Respondent emphasizes that Petitioner delayed over three months before seeking treatment, only used vague descriptions of when his pain began, and actually placed the onset of his symptoms later in time. Rule 4(c) Report at 8-9; Resp't Opp'n at 7-8. To counter this argument, Petitioner asserts that his delay had a reasonable explanation, and was not as lengthy as in other cases in which this element was found to be satisfied. Pet'r Mot. at 17-18; Pet'r Reply at 3-5. Petitioner also contends that the medical records were not overly vague and points to his declarations as support for an immediate onset. Pet'r Mot. at 4, 17-19.

Petitioner is correct that a delay in seeking treatment is not *per se* dispositive of onset. It not uncommon in SIRVA cases for petitioners to believe that the pain will eventually subside and attempt to self-treat. Petitioner also presents legitimate reasons for putting off medical care, including the desire to avoid COVID-19 exposure, a lack of health insurance, a lack of transportation, and the lack of a PCP to provide a referral. Further, a petitioner's vague temporal language, such as that his left shoulder had been painful "since" or "after" the vaccination would not necessarily preclude a finding in his favor. Petitioners often employ such phrasing "based on their lack of awareness of the importance for Program purposes of specificity." *Miller v. Sec'y of Heath & Hum. Servs.*, No. 20-0959V, 2022 WL 2187589, at *4 (Fed. Cl. Spec. Mstr. April 29, 2022).

Here, however, the combination of Petitioner's treatment delay, his lack of precision, and his apparent invocation of an onset outside the 48-hour window do not collectively preponderate in favor of a two-day onset finding. Mr. Sakerwalla's note that Petitioner received the flu vaccine and then "3 weeks later, he had difficulty raising and reaching with his arm" is particularly problematic. *See* Ex. 4 at 4. This report could perhaps be discounted if Petitioner had elsewhere provided a more precise timeline. But the only other description of onset from this PT appointment is that Petitioner's pain was "observed after flu vaccination." *Id.* at 6. As to his only other medical encounters, Petitioner merely reported at his first visit with Dr. Sidiquee that he had received the flu vaccine and had left shoulder pain "for the past few months," soreness "at that time which was prolonged," and that his shoulder had been painful "since" vaccination. Ex. 11 at 18. At his second appointment nine months later, he only stated that his pain started "after" the vaccination. Ex. 11 at 9. These statements are equivocal, and do not provide more than limited support for the conclusion that Petitioner's pain likely began shortly after vaccination.

I also do not find the declaration evidence to be sufficiently compelling to outweigh the medical records. Petitioner states that he began to feel pain and soreness in his left shoulder "[w]ithin the first two days" or "within 48 hours" after vaccination. *See* Ex. 1 at 2, 4; Ex. 8 at 1. However, this is a formulaic recitation of the SIRVA QAI and it does not sufficiently supplement the medical records with corroborative facts. The declarations of Petitioner's brother and Ms. Hundley also rely solely upon information that Petitioner told them about his pain - not their own personal knowledge - and I give them less weight than the more objective medical records.[9]

Further, Petitioner's attempts to correct Mr. Sakerwalla's notes are contradictory. In his second declaration, Petitioner explains that he told Mr. Sakerwalla that his pain began when he received the flu shot, but then got progressively worse, and that about three weeks later, he had difficulty raising and reaching with that arm. Ex. 8 at 3. Petitioner thus implies that Mr. Sakerwalla erroneously omitted reference to the initial pain and its progression over three weeks.[10] However, in the third declaration, Petitioner claims that during the first three weeks after the flu vaccination, he had "severe, constant pain" in his shoulder, which then improved slightly. Ex. 16 at 2. This new statement undoes any suggestion that Mr. Sakerwalla misunderstood that Petitioner's pain started immediately but then progressed over three weeks until it limited his ROM. In light of these inconsistencies, I do not find that Petitioner has proven onset.

## Conclusion

Petitioner has presented insufficient proof to establish an entitlement to compensation for a Table SIRVA. As a result, he cannot obtain compensation for the Table SIRVA injury. Moreover, Petitioner has not alleged a causation-in-fact claim and I do not find on this record that such a claim would be tenable.

Accordingly, Petitioner's motion for a ruling on the record and request for damages is **DENIED**, and the Amened Petition is dismissed. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in

---

[9] Additionally, Mr. Ferrer's declaration stated that he spoke to his brother in *September 2020* about "pain where he received the vaccination shot [sic] that would not go away." Ex. 9 at 2. This declaration is therefore also imprecise as to onset and does not provide information, even second-hand, indicating that Petitioner's pain began within 48 hours of vaccination.

[10] Petitioner makes the argument in his motion that Mr. Sakerwalla "failed to include information regarding the history of [his] pain (i.e. that it started when he received the flu shot) and just noted a history regarding the ROM deficits . . . ." Pet'r Mot. at 9.

accordance with this Decision.[11]

**IT IS SO ORDERED.**

          **s/Brian H. Corcoran**
          Brian H. Corcoran
          Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.